**Adam C. Anderson (Bar No. 024314)**

**ANDERSON LAW PLLC**

**48 North Macdonald**

**Mesa, AZ 85201**

**480-272-5983**

**adam@acandersonlaw.com**

**Attorney for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

## PRESCOTT DIVISION

| | |
|---|---|
| **JAMES BURBACK,** | |
| **Plaintiff,** | |
| **v.** | **No.** |
| **QUANTUM MANAGEMENT,** | **COMPLAINT & TRIAL** |
| | **BY JURY DEMAND** |
| **Defendant.** | |

NOW COMES the Plaintiff, JAMES BURBACK, by and through his attorneys, ANDERSON LAW PLLC, and for his complaint against the Defendant, QUANTUM MANAGEMENT, Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.    JURISDICTION & VENUE

2.    Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4.     JAMES BURBACK, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Kingman, County of Mohave, State of Arizona.

5.     The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Check N Go (hereinafter, "the Debt").

6.     The Debt was for a payday loan, the funds of which were used for the personal use of Plaintiff and/or used for household expenditure.

7.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8.     QUANTUM MANAGEMENT, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Arizona.  Defendant's principal place of business is located in the State of New York.

9.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.   <u>ALLEGATIONS</u>

14.    In or around October 2012, Defendant initiated a telephone a telephone call to Plaintiff in an attempt to collect the Debt.

15.    During the course of the aforesaid telephone call Defendant informed Plaintiff of the amount of the Debt.

16.    Defendant further told Plaintiff if he did not pay the Debt he would face "criminal charges."

17.    During the course of the aforesaid telephone conversation, Defendant told Plaintiff that he could enter into a payment plan with Defendant relative to the Debt.

18.    Defendant told Plaintiff that he could make three (3) payments to Defendant, each in the amount of $236.00, relative to the Debt.

19.    On that same day, subsequent to Defendant having made the aforesaid statements to Plaintiff, Plaintiff initiated a telephone call to Defendant.

20.    During the course of the parties telephone conversation, Plaintiff informed Defendant that he was not able to afford making three (3) payments to Defendant each in the amount of $263.00.

21.    Defendant told Plaintiff that if he did not make payments relative to the Debt then Defendant would take Plaintiff's account to the "next level" and Plaintiff would face criminal charges.

22.    Due to Defendant's representations to Plaintiff, as delineated above, Plaintiff was coerced into entering into a payment plan with Defendant relative to the Debt.

23.    Due to Defendant's representations to Plaintiff, as delineated above, Plaintiff requested that he be able to enter into a payment agreement with Defendant wherein he could make payments to Defendant in an amount less than $23.00 per payment.

24.    Defendant told Plaintiff that he could make payments relative to the Debt in the amount of $101.66 per payment.

25.     Defendant told Plaintiff that he had to make a total of eight (8) payments to Defendant, each in the amount of $101.66.

26.     The parties then agreed that Plaintiff could make payments to Defendant, on a bi-monthly basis, relative to the Debt.

27.     The parties then confirmed the terms of the payment agreement entered into the parties relative to the Debt.

28.     Defendant's representation that Plaintiff would face criminal criminals if the Debt was not paid had the effect of conveying to an unsophisticated consumer that Plaintiff had engaged in criminal conduct with respect to the.

29.     Plaintiff had not engaged in criminal conduct with respect to the Debt.

30.     Defendant's representation that Plaintiff had engaged in criminal conduct relative to the Debt was false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct relative to the Debt.

31.     Defendant's representation that Plaintiff had engaged in criminal conduct relative to the Debt misrepresented the character, status and/or legal nature of the Debt.

32.     Defendant's representations that Plaintiff would face criminal charges if the Debt was not paid were statements made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

33.     On or about October 23, 2012, Plaintiff made a payment to Defendant in the amount of $101.66 relative to the Debt.

34.     On or about October 23, 2012, Defendant accepted the payment made by Plaintiff.

35.     On or about November 5, 2012, Plaintiff made a payment to Defendant in the amount of $101.66 relative to the Debt.

36.     On or about November 5, 2012, Defendant accepted the payment made by Plaintiff.

37.     Plaintiff's next payment to Defendant, in the amount of $101.66, was due on or about November 17, 2012.

38.     On or about November 17, 2012, Plaintiff did not have sufficient funds available to make the $101.66 payment to Defendant relative to the Debt.

39.     On or about November 19, 2012, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the Debt.

40.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, Defendant left Plaintiff a voicemail message in an attempt to collect the Debt.

41.     In the voicemail message left by Defendant for Plaintiff, Defendant stated that Plaintiff had to contact Defendant by November 21, 2012, at 3:00 p.m. (i.e. the next day) to make his payment relative to the Debt.

42.     In the voicemail message left by Defendant for Plaintiff, Defendant told Plaintiff if he did not contact Defendant by the aforesaid date and time then Defendant would issue paperwork indicating Plaintiff refused to pay the Debt.

43.     In the voicemail message, Defendant further stated if Plaintiff did not contact Defendant by the aforesaid date and time then the payments Plaintiff paid to Defendant relative to the Debt would be null and void.

44.     Prior to November 21, 2012, as delineated above, Plaintiff had made payments to Defendant relative to the Debt.

45.     Prior to November 21, 2012, as delineated above, Defendant accepted payments made by Plaintiff relative to the Debt.

46.     Defendant's representations to Plaintiff that the payments made towards the Debt would be null and void were false, deceptive and/or misleading given that the aforesaid payments were already accepted by Defendant and applied towards the balance of the Debt.

47.     Defendant's representations to Plaintiff that the payments made towards the Debt would be null and void misrepresented the character, nature and/or legal status of the Debt given that the aforesaid payments were already accepted by Defendant and applied towards the balance of the Debt.

48.     At no prior to Defendant having left the aforesaid voicemail message for Plaintiff did Plaintiff advise Defendant that he refused to pay the Debt.

49.     Defendant's representations to Plaintiff that Plaintiff if he did not contact Defendant by November 21, 2012, then Defendant would issue paperwork indicating Plaintiff refused to pay the Debt had the effect of conveying to an unsophisticated consumer that Defendant would refer the Debt to Check N Go and Check N Go would take additional collection actions against Plaintiff, such as filing a lawsuit against Plaintiff.

50.     Defendant's representation to Plaintiff that it would refer the debt on which it was attempting to collect to Check N Go had the effect of conveying to an unsophisticated consumer that Check N Go would proceed with initiating a lawsuit against Plaintiff relative to the debt he allegedly owed.

51.     Upon information and belief, at the time Defendant threatened to issue paperwork indicating Plaintiff refused to pay the Debt, Defendant had no intent to carry out the threatened conduct.

52.     Upon information and belief, Defendant never informed Check N Go that Plaintiff refused to pay the Debt.

53.     To date, Check N Go has not filed a lawsuit against Plaintiff for the Debt.

54.     Defendant's statement that it would issue paperwork indicating Plaintiff refused to pay the Debt was neither a statement made in an effort to seek payment from Plaintiff nor a statement made to further the collection efforts of Defendant.

55.     The natural consequence of Defendant's statement to Plaintiff, as delineated above, was to unjustly condemn and vilify Plaintiff for his non-payment of the Debt.

56.     The natural consequence of Defendant's statement was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

57.     The natural consequence of Defendant's statement was to cause Plaintiff mental distress.

58.     In its attempts to collect the Debt, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

  a.  Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

  b.  Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

  c.  Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

  d.  Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

  e.  Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10); and,

  f.  Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

59.     As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.     JURY DEMAND

60.     Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JAMES BURBACK, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

  a.  All actual compensatory damages suffered;

  b.  Statutory damages of $1,000.00;

c.      Plaintiff's attorneys' fees and costs;

d.      Any other relief deemed appropriate by this Honorable Court.

Respectfully Submitted,


By:    s/ Adam Anderson

**Adam Anderson**

**Attorney for Plaintiff,**

**JAMES BURBACK**


**December 31, 2012**

**Adam C. Anderson (Bar No. 024314)**

**ANDERSON LAW PLLC**

**48 North Macdonald**

**Mesa, AZ 85201**

**480-272-5983**

**adam@acandersonlaw.com**

**Attorney for Plaintiff**

Complaint and Jury Demand – 8