Adam C. Anderson (Bar No. 024314)
ANDERSON LAW PLLC
48 North Macdonald
Mesa, AZ 85201
480-272-5983
adam@acandersonlaw.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PRESCOTT DIVISION

| | |
|---|---|
| JAMES BURBACK,<br><br>      Plaintiff,<br><br>  v.<br><br>NORTHEAST MANAGEMENT RECOVERY, LLC., d/b/a QUANTUM MANAGEMENT AND JASON KACZMAREK<br><br>      Defendants. | No. 3:12-cv-08260-DGC<br><br>AMENDED COMPLAINT<br>AND JURY DEMAND |

NOW COMES the Plaintiff, JAMES BURBACK, by and through his attorneys, ANDERSON LAW PLLC, and for his complaint against the Defendants, NORTHEAST MANAGEMENT RECOVERY, LLC., d/b/a QUANTUM MANAGEMENT & JASON KACZMAREK, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

Amended Complaint– 1

## II.  JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III.  PARTIES

4. JAMES BURBACK, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Kingman, County of Mohave, State of Arizona.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Check N Go (hereinafter, "the Debt").

6. The Debt was for a payday loan, the funds of which were used for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. NORTHEASTERN MANAGEMENT RECOVERY, LLC., d/b/a QUANTUM MANAGEMENT, (hereinafter, "NMR") is a business entity engaged in the collection of debt within the State of Arizona.  NMR's principal place of business is located in the State of New York.

9. The principal purpose of NMR's business is the collection of debts allegedly owed to third parties.

10. NMR regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, NMR sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, NMR acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, NMR acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. Defendant, Jason Kaczmarek, (hereinafter "Kaczmarek") is an individual who, upon information and belief, was at all relevant times residing in the State of New York.

15. Upon information and belief, at all relevant times, Kaczmarek was acting as an Owner, Officer, Director, Manager and/or agent of NMR.

16. Upon information and belief, at all relevant times, Kaczmarek was vested with the responsibility to manage NMR.

17. Upon information and belief, at all relevant times, Kaczmarek was responsible for the management and/or affairs of NMR.

18. Upon information and belief, at all relevant times, Kaczmarek was responsible for the day to day operations of NMR.

19. Upon information and belief, at all relevant times, Kaczmarek was responsible for the supervision of NMR's employees, agents and/or representatives that were attempting to collect debts.

20. Upon information and belief, at all relevant times, Kaczmarek was responsible for the management of NMR's employees, agents and/or representatives that were attempting to collect debts.

21. As such, at all relevant times, Kaczmarek acted as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

### IV.   ALLEGATIONS
### COUNT I:
### JAMES BURBACK v. NMR

22. In or around October 2012, NMR initiated a telephone a telephone call to Plaintiff in an attempt to collect the Debt.

23. During the course of the aforesaid telephone call NMR informed Plaintiff of the amount of the Debt.

24. NMR further told Plaintiff if he did not pay the Debt he would face "criminal charges."

25. During the course of the aforesaid telephone conversation, NMR told Plaintiff that he could enter into a payment plan with NMR relative to the Debt.

26. NMR told Plaintiff that he could make three (3) payments to NMR, each in the amount of $236.00, relative to the Debt.

27. On that same day, subsequent to NMR having made the aforesaid statements to Plaintiff, Plaintiff initiated a telephone call to NMR.

28. During the course of the parties telephone conversation, Plaintiff informed NMR that he was not able to afford making three (3) payments to NMR each in the amount of $263.00.

29. NMR told Plaintiff that if he did not make payments relative to the Debt then NMR would take Plaintiff's account to the "next level" and Plaintiff would face criminal charges.

30. Due to NMR's representations to Plaintiff, as delineated above, Plaintiff was coerced into entering into a payment plan with NMR relative to the Debt.

31. Due to NMR's representations to Plaintiff, as delineated above, Plaintiff requested that he be able to enter into a payment agreement with NMR wherein he could make payments to NMR in an amount less than $23.00 per payment.

32. NMR told Plaintiff that he could make payments relative to the Debt in the amount of $101.66 per payment.

33. NMR told Plaintiff that he had to make a total of eight (8) payments to NMR, each in the amount of $101.66.

34. The parties then agreed that Plaintiff could make payments to NMR, on a bi-monthly basis, relative to the Debt.

35. The parties then confirmed the terms of the payment agreement entered into the parties relative to the Debt.

36. NMR's representation that Plaintiff would face criminal criminals if the Debt was not paid had the effect of conveying to an unsophisticated consumer that Plaintiff had engaged in criminal conduct with respect to the.

37. Plaintiff had not engaged in criminal conduct with respect to the Debt.

38. NMR's representation that Plaintiff had engaged in criminal conduct relative to the Debt was false, deceptive and/or misleading given that Plaintiff had not engaged in the aforesaid conduct relative to the Debt.

39. NMR's representation that Plaintiff had engaged in criminal conduct relative to the Debt misrepresented the character, status and/or legal nature of the Debt.

40. NMR's representations that Plaintiff would face criminal charges if the Debt was not paid were statements made by NMR to Plaintiff in an attempt to disgrace Plaintiff.

41. On or about October 23, 2012, Plaintiff made a payment to NMR in the amount of $101.66 relative to the Debt.

42. On or about October 23, 2012, NMR accepted the payment made by Plaintiff.

43. On or about November 5, 2012, Plaintiff made a payment to NMR in the amount of $101.66 relative to the Debt.

44. On or about November 5, 2012, NMR accepted the payment made by Plaintiff.

45. Plaintiff's next payment to NMR, in the amount of $101.66, was due on or about November 17, 2012.

46. On or about November 17, 2012, Plaintiff did not have sufficient funds available to make the $101.66 payment to NMR relative to the Debt.

47. On or about November 19, 2012, NMR initiated a telephone call to Plaintiff in a further attempt to collect the Debt.

48. At the time NMR initiated the aforesaid telephone call to Plaintiff, NMR left Plaintiff a voicemail message in an attempt to collect the Debt.

49. In the voicemail message left by NMR for Plaintiff, NMR stated that Plaintiff had to contact NMR by November 21, 2012, at 3:00 p.m. (i.e. the next day) to make his payment relative to the Debt.

50. In the voicemail message left by NMR for Plaintiff, NMR told Plaintiff if he did not contact NMR by the aforesaid date and time then NMR would issue paperwork indicating Plaintiff refused to pay the Debt.

51. In the voicemail message, NMR further stated if Plaintiff did not contact NMR by the aforesaid date and time then the payments Plaintiff paid to NMR relative to the Debt would be null and void.

52. Prior to November 21, 2012, as delineated above, Plaintiff had made payments to NMR relative to the Debt.

53. Prior to November 21, 2012, as delineated above, NMR accepted payments made by Plaintiff relative to the Debt.

54. NMR's representations to Plaintiff that the payments made towards the Debt would be null and void were false, deceptive and/or misleading given that the aforesaid payments were already accepted by NMR and applied towards the balance of the Debt.

55. NMR's representations to Plaintiff that the payments made towards the Debt would be null and void misrepresented the character, nature and/or legal status of the Debt given that the aforesaid payments were already accepted by NMR and applied towards the balance of the Debt.

56. At no prior to NMR having left the aforesaid voicemail message for Plaintiff did Plaintiff advise NMR that he refused to pay the Debt.

57. NMR's representations to Plaintiff that Plaintiff if he did not contact NMR by November 21, 2012, then NMR would issue paperwork indicating Plaintiff refused to pay the Debt had the effect of conveying to an unsophisticated consumer that NMR

would refer the Debt to Check N Go and Check N Go would take additional collection actions against Plaintiff, such as filing a lawsuit against Plaintiff.

58. NMR's representation to Plaintiff that it would refer the debt on which it was attempting to collect to Check N Go had the effect of conveying to an unsophisticated consumer that Check N Go would proceed with initiating a lawsuit against Plaintiff relative to the debt he allegedly owed.

59. Upon information and belief, at the time NMR threatened to issue paperwork indicating Plaintiff refused to pay the Debt, NMR had no intent to carry out the threatened conduct.

60. Upon information and belief, NMR never informed Check N Go that Plaintiff refused to pay the Debt.

61. To date, Check N Go has not filed a lawsuit against Plaintiff for the Debt.

62. NMR's statement that it would issue paperwork indicating Plaintiff refused to pay the Debt was neither a statement made in an effort to seek payment from Plaintiff nor a statement made to further the collection efforts of NMR.

63. The natural consequence of NMR's statement to Plaintiff, as delineated above, was to unjustly condemn and vilify Plaintiff for his non-payment of the Debt.

64. The natural consequence of NMR's statement was to produce an unpleasant and/or hostile situation between NMR and Plaintiff.

65. The natural consequence of NMR's statement was to cause Plaintiff mental distress.

66. In its attempts to collect the Debt, NMR violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

   c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   d. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

   e. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10); and,

   f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

67. As a result of NMR's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JAMES BURBACK, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against NMR as follows:

   a. All actual compensatory damages suffered;

   b. Statutory damages of $1,000.00;

   c. Plaintiff's attorneys' fees and costs;

   d. Any other relief deemed appropriate by this Honorable Court.

## COUNT II:
## JAMES BURBACK v. KACZMAREK

68. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

69. In its attempts to collect the debt allegedly owed by Plaintiff to Check N Go, Kaczmarek violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;
   b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);
   c. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);
   d. Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);
   e. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10); and,
   f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

70. As a result of Kaczmarek's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, JAMES BURBACK, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, JASON KACZMAREK, as follows:

   a. All actual compensatory damages suffered;
   b. Statutory damages of $1,000.00;
   c. Plaintiff's attorneys' fees and costs; and,
   d. Any other relief deemed appropriate by this Honorable Court.

Amended Complaint– 9

## V. JURY DEMAND

71. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

By:   s/ Adam Anderson

**Adam Anderson**

**Attorney for Plaintiff,**

**JAMES BURBACK**

**April 4, 2013**

**Adam C. Anderson (Bar No. 024314)**

**ANDERSON LAW PLLC**

**48 North Macdonald**

**Mesa, AZ 85201**

**480-272-5983**

**adam@acandersonlaw.com**

**Attorney for Plaintiff**